ROBERT SWINLEY

*v.*

HARRIET FORCE et al.

[Decided November 16th, 1910.]

1. Where the demurrer to a bill to foreclose a mortgage, interposed by defendants owning undivided interests in the mortgaged land, is a joint demurrer to the whole bill, if complainant, taking the well-pleaded allegations of the bill as true, is entitled to foreclose his mortgage on any interest of the demurring defendants, or any of them. the demurrer must be overruled.

2. A demurrer to a bill to foreclose a real estate mortgage which specifies as a cause of demurrer that no interest has been paid on the mortgage during a period of over twenty-eight years, and that defendants insist that the bond and mortgage have become extinct, and that at the time complainant took his assignment of the mortgage it had lapsed because interest had not been paid thereon for over twenty-two years, sufficiently notifies complainant that the lapse of time since the last payment of interest is relied on as a bar to his right to foreclose.

3. The object of specifications of causes of demurrer to a bill in equity is to notify complainant of the points raised against the case made by the bill, and the test of the sufficiency of the specifications is whether they exhibited the objections to the bill which were intended to be presented to the court for argument by the demurrer.

4. A mortgage is extinct, whether the debt secured thereby is paid in cash or is presumed in law to have been paid by reason of the lapse of time and non-payment of interest.

5. Under the rule that the object of a demurrer to a bill in equity is to obtain a decree dismissing the bill only as to the demurring defendants, a demurrer to a bill to foreclose a real estate mortgage, interposed by defendants owning an undivided two-thirds of the mortgaged property, is properly sustained, though the bill shows that complainant is entitled to foreclose as against the remaining undivided interest.

6. Where a complainant foreclosing a mortgage undertakes to get the benefit of a payment of interest as an acknowledgment of the mortgage debt, or as a bar to the claim of adverse possession, the fact to be disclosed is the date when the payment was made, as the date when the acknowledgment of the debt or recognition of the mortgagee's estate was made.

7. One holding an overdue obligation may not prevent the running of limitations after his death, by providing in his will that his executor

shall not institute any proceeding to enforce the obligations or take any steps to collect the same during the lifetime of a person named, or during any other period, measured in any way.

8. One holding overdue obligations may not prevent a presumption of payment from being established by lapse of time, after his death, by providing in his will that his executor shall not institute any proceeding to enforce the obligations during the lifetime of an individual, or during any other period specified.

9. A husband and wife executed a mortgage. The husband died intestate the following year, and two years later the mortgagee assigned the mortgage to a son of the mortgagors and he held the mortgage for fifteen and one-half years, until his death, without obtaining any payment of principal or interest, or any acknowledgment of the existence of the mortgage or of the debt secured thereby. The son executed a will stipulating that his executor should not institute any proceeding to enforce the mortgage during the lifetime of his mother. This will was not admitted to probate until many years after his death. The mother, who survived the son, did not expressly or impliedly accept the postponement of foreclosure proceedings provided for in the will.—*Held,* that the provision in the will was without force as against the other heirs of the mortgagor, who had no notice of it for many years after the son's death.

10. An acknowledgment, to operate as an avoidance of the statute of limitations, must be made to the creditor, or must have been intended to be communicated to him.

11. An acknowledgment by a debtor of the existence of a debt made to a third person is a statement against interest, standing as evidence of a fact, and may rebut the presumption of payment resulting from lapse of time.

12. A presumption of payment of a bond and mortgage on which no payments have been made for twenty years, cannot be rebutted simply by proof in fact of non-payment unless the delay for twenty years is satisfactorily accounted for or explained.

13. An acknowledgment of the existence of a debt made by a debtor to a stranger, who contemplated the purchase of the mortgage securing the debt, made after the lapse of twenty years, is insufficient, standing by itself, to rebut the presumption of payment, especially where the stranger endeavoring to obtain an acknowledgment refrained from disclosing his interest.

14. Where the relation of mortgagor and mortgagee exists, the possession of the mortgagor is not adverse to the mortgagee until there is some act of disaffirmance by the mortgagor, disclosing that his possession is inconsistent with the rights of the mortgagee.

15. A stranger who occupies mortgaged land under an open claim of absolute ownership holds adversely to the mortgagee from the beginning, and after twenty years of such adverse possession his defence, under the statute of limitations, against the mortgagee is complete, though the debt may have been kept alive by the mortgagor, and may remain in full force against him.

16. A husband and wife executed a mortgage on their homestead. The husband died intestate the following year, and two years later the mortgagee assigned the mortgage to a son of the mortgagors, who held it for fifteen and one-half years, until his death, and during that time he was in possession with the other heirs without asserting any right against the other heirs.—*Held*, that the possession of the heirs was not adverse to the mortgagee, and though it continued for more than twenty years it did not bar a foreclosure, provided the debt was kept alive.

17. Mere lapse of twenty years establishes a presumption of payment of a bond and mortgage on which no payments have been made during the period, and the presumption cannot be rebutted by proof, in fact, of non-payment without accounting for the delay; but a partial payment made within the twenty years is a sufficient explanation of the delay and permits the enforcement of the bond and mortgage.

18. Mere kinship between mortgagor and mortgagee, though accompanied by intimate confidential relations, does not prevent the presumption of payment after twenty years.

19. The court, in considering the sufficiency of a bill demurred to, must accept as true the allegations of the bill.

20. The efficacy of the defence of laches does not depend on proof that lapse of time has resulted in the actual loss of testimony through death or otherwise, but it is generally sufficient that the court cannot feel competent of its ability to ascertain the truth as well as it could when the subject of investigation was recent.

21. Where one who acquired a mortgage twenty-two years after the last payment thereon relied on proof of facts to rebut the presumption of payment, the equitable doctrine of laches would not permit him to wait six years before foreclosing the mortgage, until the owners of the mortgaged premises and their witnesses were dead, and then have his equitable remedy of foreclosure by proving facts concerning which the dead owners and witnesses might have testified if the foreclosure had been brought while they were alive.

22. Since a mortgagee's estate is not recognized as existing after the debt which it secures has ceased to exist, the presumption of payment of the debt is a bar to an action of ejectment by the mortgagee.

23. The presumption of payment of the debt secured by a mortgage, arising from lapse of time, is a bar to a suit to foreclose the mortgage.

---

On demurrer.

*Messrs. Traphagen & Beekman,* for the demurrants.

*Mr. George S. Hilton, contra.*

STEVENSON, V. C.

The bill is filed to foreclose a mortgage executed on June 23d, 1876, by Eunice Force and Munson Force, her husband, to George

Beesley, to secure the payment of $1,300 and interest, payable semi-annually at seven per cent. per annum, the principal being payable one year after date. There is no allegation that any interest on this mortgage was ever paid by anyone. The bill alleges that the entire amount of principal is due and interest thereon from June 23d, 1880.

The demurrer is filed by the defendants Harriet Force, the owner of an undivided one-third of the land covered by the mortgage, and Hallie Spear, Hattie Kent and John Kent, her husband, the owners of another undivided one-third of said premises.

1. Although the introductory part of the demurrer is inartificially drawn, I think the view of counsel for the complainant is correct that the demurrer must be regarded as a joint demurrer to the whole bill. If, therefore, it appears, taking the well-pleaded allegations of the bill to be true, that the complainant is entitled to foreclose his mortgage upon any interest of the demurring defendants, or any of them, in the land covered by the mortgage, or any part thereof, the demurrer must be overruled.

The demurrer specifies as a "cause of demurrer" that the mortgage in question was made "over thirty-two years ago; that no interest has been paid thereon since June 23d, 1880, a period of over twenty-eight years, and that therefore the defendants insist "that said bond and mortgage have become extinct." The demurrer elsewhere specifies that at the time when the complainant took his first assignment of the mortgage, viz., on May 1st, 1902, the mortgage "had lapsed and become extinct, no interest having been paid on the same for over twenty-two years."

Counsel for the complainant argues that the statute of limitations is not specified as a defence in the demurrer, pointing out that the statute merely bars the remedy, and that therefore there is no force in the allegation that the bond and mortgage are extinct. This objection, I think, is hypercritical and without merit. The object of specifications of causes of demurrer is to notify the complainant of the points raised against the case made out by the bill, and the test of the sufficiency of these specifications is found in the question whether they exhibit the objections to the bill which were intended to be presented to the court

for argument by the demurrer. I think it is plain that taking these specifications as a whole they clearly and unmistakably notify the complainant that it is the lapse of time since the bond and mortgage came due, or since the last payment of interest alleged by the bill to have been made thereon, that is to be set up in bar of the complainant's right to a foreclosure. The notice contained in the demurrer did not mislead the complainant but was well understood by his counsel, and both parties came prepared to argue, and have argued the question whether or not this ancient right of foreclosure, which accrued nearly thirty-two years before this suit was commenced, appears from the allegations of the bill to be barred by lapse of time.

If the views hereinafter expressed are correct, the important question raised by the bill has little, if any, relation to the statute of limitations even by way of analogy, and is most distinctly and accurately presented for argument by the specific charge made in the demurrer that the mortgage has "become extinct." A mortgage is certainly extinct whether the debt secured thereby is paid in cash or is presumed in law to have been paid by reason of the lapse of time and non-payment of interest.

2. The further objection on behalf of the complainant that the demurrer of these defendants should be overruled because the bill shows that the complainant is entitled to foreclose his mortgage upon the estate in the mortgaged land of other defendants who together own an undivided one-third, and who have interposed no defence, is invalid. The object of a demurrer is to obtain a decree dismissing the bill only as to the demurring defendants.

The matter therefore to be considered is whether the bill exhibits a right of foreclosure in the complainant against the demurrants or any or either of them.

My conclusion is that the demurrer should be sustained.

3. The following is the case made out by the bill to which these defendants interpose their demurrer: The indebtedness secured by the bond and mortgage was the indebtedness of Eunice Force and Munson Force, her husband. The mortgage covered the homestead where the mortgagors resided and which belonged to Eunice, and another tract of land which belonged to Munson.

Munson Force died intestate on July 10th, 1877, seventeen days after the bond and mortgage came due, and there is no allegation that he ever paid any part of the principal or interest alleged to have been secured thereby, or in any way acknowledged the validity of either of these obligations after he had executed them in June, 1876.

On June 24th, 1879, the mortgagee, Beesley, assigned the bond and mortgage to Columbus Force, a son of Munson and Eunice Force. Columbus Force held the bond and mortgage for fifteen and one-half years, until his death on January 10th, 1895. There is no allegation that any part of the principal or interest was paid to Columbus Force, or that his mother, Eunice Force, who was the owner of one of the tracts, or his brother and sisters, who with him owned as heirs of Munson Force the other tract, ever in any way acknowledged the existence of the bond and mortgage, or of the indebtedness originally secured thereby. At the death of Columbus Force, the bond and mortgage were nearly seventeen and one-half years overdue.

The statement and admission in the bill that the interest was unpaid from June 23d, 1880, neither contains a sufficient allegation that the interest had been paid for any part of the period prior to that date, nor indicates when any payment of interest upon the mortgage from its date was in fact made, assuming that the bill supports the surmise that the interest had been paid somehow at some time from the date of the mortgage until June 23d, 1880. If, contrary to a well-settled rule of pleading, it must be inferred that the interest on this bond and mortgage were paid up to June 23d, 1880, such payment might have been made the day after the mortgage was executed or on the day when it fell due. When in a case like this, the complainant foreclosing a mortgage, undertakes to get the benefit of a payment of interest as an acknowledgment of the mortgage debt, or as a bar to the claim of adverse possession, the important fact to be disclosed is the date when the payment was made—the date when the acknowledgment of the debt or recognition of the mortgagee's estate was made. I do not think, however, that for the purposes of this case it makes any difference if we assume, in accordance with the apparent admission of the de-

murrer, that on or before June 23d, 1880, the interest up to that date was paid.

When Columbus Force died, on January 10th, 1895, his mother, Eunice Force, apparently remained the owner of the homestead tract, while since the death of Munson Force, on July 10th, 1877, the equity of redemption in the other tract apparently had been vested in his three children, the said Columbus Force, Mary L. Force (or Spear) and Harriet Force, subject to the right of dower of the widow, Eunice Force.

On January 25th, 1895, Eunice Force died intestate, leaving as her heirs-at-law her children Mary L. Force (Spear), Harriet Force, and her grandchildren Ella E. Force, Munson Force, 2d, Emma Van Voorhies, wife of Joseph Van Voorhies, and John Force, children of Columbus Force, deceased. Thus it came about that fifteen days after the death of Columbus Force the equity of redemption in both tracts became vested in the two children (Mary L. Spear and Harriet Force) of Munson and Eunice Force, each holding an undivided one-third, and Ella E. Force, Munson Force, 2d, Emma Van Voorhies and John Force, the children of Columbus Force, deceased, each of whom held an undivided one-twelfth, subject to the dower right of their mother, Sarah A. Force, the widow of Columbus Force, deceased, in one of these tracts. This was the apparent situation at the time of the death of Eunice Force, on January 25th, 1895, when it seems to have been supposed that Columbus Force died intestate. The will of Columbus Force, proved thirteen years later, will be subsequently referred to.

Prior to May 1st, 1902, Emma Van Voorhies and Ella E. Force both died intestate, not having had issue, and in that manner it came about that on the last-mentioned date Munson Force, 2d, and John Force were the owners of an undivided one-third interest in the mortgaged premises, the husband of Emma Van Voorhies not being entitled to any curtesy. On May 1st, 1902, therefore, the interests of the owners of the mortgaged premises stood as follows: Mary L. Spear, one-third; Harriet Force, one-third; Munson Force, 2d, one-sixth; John Force, one-sixth, the interests of Munson and John being subject to the dower right of their mother in an undivided one-

third of the second tract originally owned by the first Munson Force.

In this situation of affairs, on May 1st, 1902, nearly twenty-five years after the mortgage came due, and nearly twenty-two years after the date up to which we may infer or surmise from the allegations of the bill and demurrer that interest at some time, and in some manner, was paid on the mortgage, the complainant took an assignment of the bond and mortgage from Munson Force, 2d, John Force and Sarah A. Force, the widow of Columbus Force, "in and for the payment of a certain part" of a debt due to the complainant from Munson Force, 2d, which amounted to $2,346. The bond and mortgage were then delivered to the complainant. This assignment was recorded May 23d, 1902. The assignment contained a covenant that the principal ($1,300) and interest from June 23d, 1880, was due and owing. There is no allegation that the demurring defendant Harriet Force, or the mother of the other demurring defendants who was then alive, Mrs. Mary L. Spear, had any notice of this assignment or of any transaction by which the complainant acquired the bond and mortgage, or any interest therein. The complainant thus took an assignment of this bond and mortgage from the widow and children of the record owner thereof, Columbus Force, deceased, and thereby claimed to acquire an equitable title to the bond and mortgage, except so far as Joseph Van Voorhies, the husband of Emma Van Voorhies, deceased, may have had or claimed to have an interest in the same. The bill alleges that all the debts and funeral expenses of Columbus Force had been paid and his estate had been settled, except so far as related to the bond and mortgage, and that before the assignment was made to the complainant, Joseph Van Voorhies, upon being requested to join in the assignment,

"disclaimed any interest whatever in the said bond and mortgage, and declined for the want of any interest therein to join in the execution of the assignment, and that he made no objection to the assignment."

The complainant being thus in possession of the bond and mortgage under this assignment, held the same for over six years, during which it is not alleged he made any effort to collect

the amount due thereon, or notified Mary L. Spear or Harriet Force, each of whom owned an undivided one-third of the mortgaged premises, that he had acquired a mortgage on their property, or had any claim against them or against their property of any kind whatever. On August 6th, 1906, while the complainant was thus holding his mortgage concealed from these owners, one of them, Mary L. Spear, died intestate, leaving as her heirs-at-law her children, the two demurrants, Hallie Spear and Hattie Kent, wife of John Kent. It may be noted that during this same period, while the complainant was holding his assignment in concealment, refraining from all assertion of rights thereunder, Joseph E. Van Voorhies, one of the executors of Columbus Force and husband of Emma Van Voorhies, deceased, died intestate, and whatever knowledge he may have had in regard to the ancient transactions which we are investigating of course perished with him.

On September 10th, 1908, a will of Columbus Force was brought forward and proved, and letters testamentary were issued to Munson Force, 2d, who, with the said Joseph E. Van Voorhies, then deceased, was named as executor in the will.

On November 12th, 1908, Munson Force, 2d, as executor of Columbus Force, made an assignment to the complainant, the particulars of which need not be set forth further than to say that it undertook to ratify the former assignment and to transfer any interest in the bond and mortgage not already transferred by that assignment to the complainant, subject to certain conditions which required the complainant to foreclose at once, allow the costs to be paid out of the property, also allow any enforceable debts of Columbus Force to be paid, and the remainder of the proceeds of sale to be paid to the person or persons entitled thereto under the said assignment or otherwise.

The bill alleges that possession of the two tracts have followed the devolution of title, and that no one of the parties interested has held adversely to any other party. There is no pretense that any possession of any part of the mortgaged premises has been had by Beesley, the original mortgagee, or any other person as mortgagee, claiming to hold the mortgage by assignment or otherwise.

In addition to the fact that Columbus Force for the fifteen
and one-half years during which he held this overdue bond and
mortgage was holding it upon the property of his mother, which
at the time the mortgage was made at any rate was her home-
stead, and also upon property which he and his sisters owned in
common, some other circumstances are alleged in the bill which
must be considered in their bearing upon the questions whether
the delay in the attempted foreclosure of this mortgage is "suffi-
ciently accounted for or explained," and whether these demur-
ring defendants, or their predecessors in title at any time during
twenty years before this suit was commenced, acknowledged the
mortgage estate in question, or the indebtedness secured thereby,
so as to deprive them of the benefit of the bar against this suit
which is generally referred to, often very inaccurately, as the
defence of the statute of limitations.

The bill sets forth that the will of Columbus Force, which
was dated July 17th, 1894, and was proved September 10th,
1908, fourteen years later, contained a

"request that no act or proceeding should be taken upon his estate or
interest therein which might result in the dispossessing his mother,
Eunice Force, of any interest in lands and real estate during her life-
time."

Her lifetime, as we have seen, continued for about six months
after this will was made, and for fifteen days after the death of
the testator. While this clause in the will of Columbus Force is
advanced by counsel for the complainant as a circumstance tend-
ing to satisfactorily account for the delay of Columbus Force,
in enforcing his bond and mortgage, no authority is cited to sup-
port the contention that such a provision in a will is competent
evidence upon the issue which is raised in this case. It is not
claimed that anyone ever knew of this provision in the will of
Columbus Force until that will was proved on September 10th,
1908. A man who holds overdue obligations certainly may not
prevent the statute of limitations from running, or a presump-
tion of payment from being established by lapse of time after his
death by providing in his will that his executor shall not insti-
tute any proceedings to enforce such obligations or take any

steps to collect the same during the lifetime of an individual named, or during any other period, measured in any way. The sisters of Columbus Force, Mary L. Spear and Harriet Force, were entire strangers to this will, and are not alleged to have had any notice of it for thirteen years after the testator, Columbus Force, died. To attribute any force to this provision of Columbus Force's will would be to admit declarations of a party in his own interest. If Columbus Force had lived until 1908 and had then filed a bill to foreclose this mortgage, it would hardly be claimed that he could produce his self-serving testamentary declaration made sixteen years before as evidence in his favor. Of course, if during the fifteen days which Eunice Force survived her son, the latter's will had been produced and Eunice had expressly or impliedly accepted the postponement of foreclosure proceedings upon her property provided for in her son's will, a very different case would be presented which we need not now consider.

The more important circumstance of the kind above referred to, which is set forth in the bill, is contained in the following allegation:

"That before the said bond and mortgage were assigned to your orator as aforesaid (referring to the assignment from the next of kin of Columbus Force made May 1st, 1902), to wit, on or about the fifteenth day of April, 1902, the said Mary L. Spear and Harriet Force *told* your orator that the said mortgage *was still in existence and in force;* and that they told your orator this upon his making inquiries of them in respect to said mortgage for the purpose of ascertaining whether or not the same was recognized as an existing lien on the lands and premises therein described, notwithstanding the length of time that had elapsed since any interest had been paid thereon, and thus enable him to determine whether or not he would take the same and the said accompanying bond in part payment of said money so due to him from the said last-mentioned Munson Force as aforesaid."

It is not alleged that the complainant, when he received this statement, notified Mary L. Spear or Harriet Force that he was contemplating accepting an assignment of this bond and mortgage in payment of a debt. For all that appears in the bill the complainant stood before these two women as an entire stranger, without the slightest interest in the bond and mortgage. There is not in this allegation the slightest suggestion of an estoppel,

but, on the contrary, it is most significant that so far as appears from the bill the complainant refrained from telling these women, who owned together two-thirds of the mortgaged premises, that he (the complainant) proposed to buy a mortgage covering their property, and that therefore he wanted them to say whether or not the mortgage was still a subsisting encumbrance upon it. For all that appears what Mary L. Spear and Harriet Force "told" to the complainant may have been a casual remark made by them or one of them. These two women do not appear to have had any knowledge of any of the transactions set forth in the bill, including the making of the mortgage or any of its assignments. Apparently all that they could have known, leaving out of view all hearsay, was whether or not they respectively had paid any part of the principal or interest secured by the bond and mortgage, and they made no statement on that subject. What they said seems to be a mere statement of a legal conclusion made by women to a party who stood before them as entirely without interest in the bond and mortgage, or the premises originally covered by the mortgage.

But the important fact about this admission of Miss Force and Mrs. Spear is that it may have been entirely true at the time it was made, and certainly became true about two weeks thereafter when Munson Force, 2d, his brother John and his mother, Sarah, made the assignment to the complainant, in which they solemnly affirmed the validity of the mortgage upon the undivided one-third of the mortgaged premises which they owned. The complainant, when he drew this statement from these two women, may have already assured himself that his debtor, Munson, 2d, stood ready to reaffirm the mortgage, at least upon his interest, in the most absolute and ample manner possible. For all that appears, Munson Force, 2d, may have assured his two aunts that this mortgage "was still in existence and in force" upon his undivided one-sixth interest. The owners of two-thirds of the mortgaged premises made no statement whatever in regard to the mortgage debt being paid or unpaid. In ignorance of the motive of the inquiry they are induced to admit or state a legal conclusion which may have been true, probably was true, and which they might have made with-

out its including by any inference the slightest acknowledgment on their part of the existence of the lien upon their property or of the mortgage debt as to them. Recognizing what the complainant may have told them, or they may have heard otherwise, that Munson Force, 2d, their nephew, for the payment of his own private debt to the complainant had acknowledged the existence of the mortgage and proposed to give an assignment covenanting that the entire amount of the mortgage debt was due, these two women, if correctly advised by counsel, would not have hesitated to make the precise admission of the legal conclusion set forth in the bill.

There is an obvious distinction between the effect of an acknowledgment of the existence of the debt to a third party, a stranger, upon the defence of the statute of limitations and its effect upon the defence of presumed payment on account of the lapse of time. In the one case the acknowledgment amounts to a promise (*Parker* v. *Butterworth, 46 N. J. Law (17 Vr.) 244, 247; 19 Am. & Eng. Encycl. L. 303* and *note 8*) ; in the other, it is merely a statement against interest which stands as evidence of a fact.

The general rule is that the acknowledgment in order to operate as an avoidance of the statute of limitations must be made to the creditor, or must have been intended to be communicated to him. The cases sustaining this doctrine are cited in *19 Am. & Eng. Encycl. L. 316 note 6.*

There is some authority for the proposition that the same rule applies where the defence is based not on the statute of limitations but on the presumption of payment after twenty years. *Matter of Kendrick, 107 N. Y. 104, 109.*

The general rule, however, seems to be as laid down in *22 Am. & Eng. Encycl. L. 601,* that at the common law this efficient acknowledgment "need not be made directly to the creditor, an acknowledgment to a third person being sufficient." See cases cited in *note 8.*

For the purposes of this case, I shall assume that a distinct and unequivocal acknowledgment of the existence of the debt made by the debtor to a stranger, even though without intent that such acknowledgment should be communicated to the credi-

tor, may amount to a sufficient acknowledgment to avoid a bar of the presumption of payment after twenty years. This view perhaps supports the theory that the presumption is merely one of fact, rebuttable by sufficient proof of non-payment. But it seems to me that such an acknowledgment made to a stranger under the conditions aforesaid, after the presumption of non-payment, has been established by the lapse of twenty years, is entitled to comparatively little evidentiary force and standing by itself, would not avail to rebut the presumption. Of course, I am regarding the complainant to whom this alleged acknowledgment was made, as standing in the position of a stranger because the bill does not allege that Miss Force or Mrs. Spear, at the time of their acknowledgment, had any notice that the complainant to whom it is alleged the acknowledgment was made had any relation whatever to the mortgage debt. Add to these circumstances the further fact that the complainant when contemplating the purchase of the mortgage, and endeavoring to obtain from two women an admission greatly against their interest, refrained from telling them how he was interested, and the force of the alleged acknowledgment as evidence would seem to be still further diminished.

The law of this state relating to the defence in equity against the foreclosure of mortgages of real estate which is based on lapse of time, so far as the same has been disclosed in judicial decisions of the courts of this state, may, I think, be found in the following reported cases and the older cases therein cited: *Blue* v. *Everett* (*Vice-Chancellor Emery, 1897*), 55 N. J. Eq. (*10 Dick.*) *329; S. C. on appeal* (*Court of Errors and Appeals, 1897*), 56 N. J. Eq. (*11 Dick.*) *455; Colton* v. *Depew* (*Vice-Chancellor Stevens, 1899*), 59 N. J. Eq. (*14 Dick.*) *126; S. C. on appeal* (*Court of Errors and Appeals, 1900*), 60 N. J. Eq. (*15 Dick.*) *454; Ely* v. *Wilson* (*Vice-Chancellor Pitney, 1900*), 61 N. J. Eq. (*16 Dick.*) *94; Magee* v. *Bradley* (*Vice-Chancellor Reed, 1896*), 54 N. J. Eq. (*9 Dick.*) *326.*

Precisely how far the authority of the decision of the court of errors and appeals delivered through Mr. Justice Dixon in *Blue* v. *Everett, supra,* may be deemed to have been overruled

or modified by the decision of the same court through Mr. Justice Depue in *Colton* v. *Depew, supra,* may be a matter for argument and future determination. It will not be necessary for me to discuss this subject at length with the view which I entertain of this case.

4. It seems to me that this is not a case in which any defence on the part of these demurrants can be rested on the statute of limitations involving necessarily adverse possession—possession by the demurrants and their predecessors of the mortgaged land adverse to the holder of the mortgage, or, in other words, in disaffirmance of the outstanding mortgage estate. In some of the reported cases expressions are used which place the defence against a foreclosure, on the ground of adverse possession for twenty years, where such defence might, it seems to me, more consistently with correct legal principles, have been rested on the legal and equitable presumption after the twenty years that the mortgage debt has been paid. The well-settled principle, I think, is that when the relation of mortgagor and mortgagee exists the possession of the former is not adverse to the estate of the latter until there is some act of disaffirmance on the part of the mortgagor, some act which shows that the possession of the mortgagor "is inconsistent with the rights of the mortgagee." *Wood Lim.* § *1211; Blue* v. *Everett, 55 N. J. Eq.* (*10 Dick.*) *329, 343; Colton* v. *Depew, 59 N. J. Eq.* (*14 Dick.*) *126, 131, 132.*

The stranger who occupies under an open claim of absolute ownership holds adversely to the mortgagee's estate from the start. After twenty years of such adverse possession, his defence under the statute of limitations, at law and equity, against the mortgagee, is complete, although the debt may have been kept alive by the obligor on the bond, and may remain in full force against him. *Ely* v. *Wilson, supra.* The mortgagor, however, does not at once after the mortgage falls due begin to hold adversely to the mortgagee. Without invoking any theory of tenancy at will, it seems to me that our whole system of real estate mortgage loans assumes that the possession of the mortgagor is maintained even after the mortgage falls due (until the mortgagee sees fit to enforce his rights) with the mortgagee's per-

mission and consent.  The contrary view, I think, is based on a pure fiction which ignores the most obvious facts.  If the mortgagor's possession for twenty years can be a bar on the theory that it has been adverse to the estate of the mortgagee, then, of course, it must have had this hostile quality during the whole period.  Hence the mortgagor who is paying the annual interest on an overdue mortgage to a savings bank or an insurance company—both mortgagor and mortgagee being satisfied with the situation and having contemplated it when the bond and mortgage were made—in fact, is in adverse possession except when he makes his annual or semi-annual payment of interest.  To use the common phraseology, the statute of limitations begins to run as soon as he makes each payment, and then stops running at least for an instant when he makes his next payment.

In the thousands of instances in New Jersey where overdue mortgages are held as permanent investments, it is safe to say that the mortgagors and the mortgagees are alike unconscious of any element of hostility in the possession of the mortgagor.  Dropping all theory and all fictions, the plain fact is that the mortgagor is in possession upon the distinct understanding and agreement that he shall remain in possession with the consent of the mortgagee until the loan is called.

In this case the demurrants hold title as heirs of the mortgagors.  They occupy the place of their ancestors who made the mortgage, and the case is destitute of evidence of a single act or declaration on their part, or on the part of their ancestors, in disaffirmance of the mortgage estate.  If the debt is unpaid, they have simply continued the permissive occupation of the mortgaged land which their ancestors were allowed by the mortgagor and his successor to enjoy.

But if I am not entirely correct in the view above set forth, the fact that Columbus Force was in possession of one of the tracts of the mortgaged premises as tenant in common with his sisters for many years prior to his death in January, 1895, without asserting any right against his co-tenants, I think would under the circumstances existing in this case, prevent the statute from running as to that tract, either against him as mortgagee or against his co-tenants in common.  *Wood Lim.* § *1149.*

Upon the whole case, including the relationship between Columbus Force and his mother and sisters, I do not think that at the time of his death in January, 1895, there was any possession in his mother or in his sisters of either of the mortgaged tracts of land which could be deemed adverse to the mortgage estate which he may then have held if the mortgage debt was then unpaid.

5. The important question in this case, it seems to me, is whether when this bill was filed on December 24th, 1908, the mortgage debt must be presumed under the facts set forth in the bill to have been in some manner, at some time and by some person, paid or otherwise satisfied. Vice-Chancellor Emery, in *Blue* v. *Everett, 55 N. J. Eq. (10 Dick.) 329* (at *p. 337*), examines the reported cases and declares that "our decisions at law, as well as in equity, establish the rule that unless the delay for twenty years is satisfactorily accounted for or explained, the presumption of payment of a bond and mortgage or other pecuniary debt is conclusive and cannot be rebutted simply by proof in fact of non-payment without acounting for the delay." The soundness of this proposition was not in any way affected by the decision of the court of errors and appeals in the same case on appeal, if, indeed, at the present time the opinion of the appellate court in that case is not to be considered as having been substantially overruled. The criticism of the principle made by Mr. Justice Dixon (*56 N. J. Eq. (11 Dick.)* *460*), if at present entitled to consideration, seems to be based solely upon the view that its operation and effect were too limited, and therefore the wider principles which he sought to establish were necessary.

It must be observed that the legal and equitable principle formulated by Vice-Chancellor Emery as the result of our decisions, recognized the function of this presumption of payment from lapse of time to give "repose" in analogy with the established function of the statute of limitations. This view is supported by the declaration of Vice-Chancellor Reed in *Magee* v. *Bradley, supra,* that the principle in question is both a rule of evidence "and a rule of public policy." According to this view, a demonstration by indisputable evidence that the debt in fact

had not been paid would be of no avail until the delay for twenty years had been "sufficiently accounted for or explained." A partial payment made within the twenty-year period surely is a sufficient "explanation." It is unexplained delay to enforce any right under the mortgage continuously for twenty years which establishes the presumption. It may be noted that if the acknowledgment of the debt is in the form of a partial payment, or in any other form, and the same is made by one who does not stand in the position of mortgagor, then such acknowledgment is referable to the mortgagee's estate and prevents the possession of the party making such acknowledgment from being deemed adverse to the mortgage estate at the time the acknowledgment is made. *Colton* v. *Depew, supra.*

Other authorities more numerous, whether equally founded in correct principles or not, sustain the proposition that mere lapse of time at most can only establish a presumption of payment which can be overcome by a sufficient amount of evidence of non-payment. According to this view, evidence explanatory of delay, or tending to prove an acknowledgment, is treated as evidence of non-payment in rebuttal of the presumption. *19 Am. & Eng. Encycl. L. 149 note 4,* and cases cited in *note 7; Cyc. 1277,* and cases cited in *note 38; Knapp* v. *Knapp, 134 Mass. 353, 356; Magee* v. *Bradley, supra; Knight* v. *McKinney, 84 Me. 107; 24 Atl. Rep. 744.*

No doubt in large numbers of instances practically the two rules lead to the same result. The evidence which is offered to demonstrate non-payment often discloses either circumstances which amount to a sufficient "explanation" of the delay, or an ample acknowledgment of the existence of the debt made by the party sought to be charged, or his successor in title within the twenty-year period.

I do not think that there is any authority controlling in this state sustaining the view that mere kinship between the mortgagor and mortgagee, even when accompanied by intimate confidential relations, has the effect to prevent the presumption of payment after twenty years from being established. *Magee* v. *Bradley (Vice-Chancellor Reed, 1896), 54 N. J. Eq. (9 Dick.) 326.* The view that mere kinship, accompanied by actual re-

lations of confidence and affection, may prevent the establishment of the presumption of payment after twenty years, it seems to me, exaggerates the probability of a debt not being demanded, exacted or the acknowledgment of it obtained from a relative, and somewhat loses sight of the probability of payment being made in such cases without those safeguards in the form of receipts and vouchers and surrender and cancellation of securities, which ordinarily are exhibited where debtor and creditor are dealing with each other as strangers in accordance with customary business rules. It is true that a son is very liable not to enforce a mortgage against property occupied by his mother, but it is also true that if by payment of cash or by some family settlement the mortgage is satisfied, the parties interested may not think it worth while to see to the surrender and cancellation of the mortgage. This is especially true where the mortgagor, the mother, knows that the mortgaged premises upon her death will descend to her children of whom the mortgagee is one. Moreover, a son may intend to let such a mortgage expire. If the presumption of payment after twenty years is based in part on public policy and is intended to prevent unreasonable delay by the creditor, and to secure to the debtor "repose" after such reasonable period has expired, why should the son's executor be permitted to defeat his intention?

Taking this whole case as it is presented by the bill of complaint, admitting every allegation to be true, as it must be read in the light of the rules which govern the interpretation of a bill of complaint upon demurrer, my conclusion is, that the facts set forth do not sufficiently account for the long delay, and do not exhibit an unequivocal acknowledgment of the debt, according to one formulation of the rule to be applied, and do not rebut the presumption of payment according to the other formulation of that rule. In either case it must be held that the presumption of payment stands.

6. Assuming, however, that the view is tenable in this case, that it does not appear from the allegations of the bill that the presumption of payment stands established, it would seem that the complainant might be barred of equitable relief under the doctrine of laches. The defendant knew when he took an as-

signment of this mortgage in 1902 that his security occupied a very peculiar position, such as to call for prompt action on his part against all parties against whom he proposed to enforce it. No interest had been paid for twenty-two years. He was taking the mortgage for its face value, and interest for twenty-two years thereon in payment of a debt due to him from one of the owners of the property described in the mortgage. This owner, Munson Force, 2d, had a large selfish interest directly hostile to that of his co-owners, which would naturally lead him to represent that the mortgage was a valid subsisting security for every dollar of principal or interest for which it could be made to stand. So far as appears from the bill he was paying or securing his debt to the complainant by acknowledging and transferring to the complainant a mortgage upon property owned to the extent of two-thirds by two women who knew nothing of the transaction and whose consent to it was not solicited. The complainant must be presumed to have had full notice of this situation, and also to have had abundant opportunity to obtain from these owners of two-thirds of the property, who are represented by these demurring defendants, precisely the same recognition of the mortgage that the assignment gave him in respect of the one-third interest. And yet it does not appear that the complainant even gave notice to the two women who owned two-thirds of the equity of redemption, that he intended to accept or had accepted this mortgage as a valid encumbrance upon their estate. There seems to be force in the argument that the complainant when accepting a mortgage under these circumstances was bound to be prompt in enforcing all the rights that he thereby undertook to acquire against these two owners who were in ignorance of these alleged rights. The complainant made no effort to enforce his mortgage against these two owners for over six years, while during that period one of them died, and one of the executors of Columbus Force also died. The efficacy of the defence based on laches does not depend upon proof that the lapse of time has resulted "in the actual loss of testimony through death or otherwise;" it is generally sufficient that "the court cannot feel confident of its ability to ascertain the truth now as well as it could when the subject for investigation was

recent." *Lutjen* v. *Lutjen* (*Court of Errors and Appeals, 1902*), *64 N. J. Eq. (19 Dick.) 773; Condit* v. *Biglow, Ibid. 504, 515.*

In this case, however, it seems clear from the allegations of the bill that most important testimony has been lost while the complainant has been holding his mortgage in concealment and taking no steps to enforce it. Joseph E. Van Voorhies, son-in-law and one of the executors of Columbus Force, died over three years after the complainant took his first assignment, and thereby claimed to become the equitable owner of this mortgage; and Mrs. Spear died a year later, four years and a half after the complainant had taken his assignment. The complainant now files his bill after Mrs. Spear's death, and bases his right to enforce this ancient mortgage largely upon a statement and admission which he alleges Mrs. Spear made to him. Not only are her heirs and successors in title put to a disadvantage, but her sister, Miss Force, must now defend this charge that she by an acknowledgment or admission revived this mortgage against her property, without having the benefit of the testimony of Mrs. Spear, who, according to the allegations of the bill, must be presumed to have been able in her lifetime to give direct and positive testimony in regard to this alleged acknowledgment. If the complainant bought this old mortgage in reliance upon admissions which these two women made to him, and so far as appears in the bill, may have made in a casual conversation with him, it may be regarded that equity would compel him to be reasonably prompt in enforcing the mortgage against the estate of these two women. Inasmuch as he waited over four years in silence until Mrs. Spear died before filing his bill, there seem to be strong grounds for holding that under the doctrine of laches no equitable remedy will be accorded to him which is based upon the acknowledgment and admission which he alleges Mrs. Spear and her sister made, and concerning which he knew Mrs. Spear would be a direct and important witness.

The general rule which excludes any defence of mere laches without any element of estoppel, against the foreclosure of a mortgage, of course, is not questioned. *Blue* v. *Everett, 55 N. J. Eq. (10 Dick.) 329, 343, 344; Barned* v. *Barned, 21 N.*

*J. Eq. (6 C. E. Gr.) 245.* The narrow point suggested is whether when a party has seen fit to acquire a mortgage twenty-two years after the last payment thereon, and he relies upon proof of facts and circumstances to rebut the usual presumption of payment, the equitable doctrine of laches will allow him to slumber on his rights and wait six years until the owners of the mortgaged premises and their witnesses are dead, and then have his equitable remedy of foreclosure against their estates, by proving the facts and circumstances concerning which the dead owners and witnesses might have testified if the foreclosure suit had been brought while they were alive. In view of the form of the demurrer, however, and the course of the argument, I do not think that this independent objection, based on the doctrine of laches, if well founded, can avail to sustain the demurrer.

7. My conclusions may be summed up in the following propositions:

(1) That the bill on its face does not sustain the defence of adverse possession for twenty years.

(2) That the lapse of twenty-eight years from the last assumed payment of interest to the filing of the bill in this cause, is not sufficiently accounted for to prevent the legal and equitable presumption of payment from being established.

(3) That no sufficient, positive and unequivocal acknowledgment of the existence of the debt made by the owners of the equity of redemption, represented by these demurrants, has been proved so as to prevent the presumption of payment from being established or to overcome and remove such presumption of payment after the same had once been established.

(4) Stating the governing principle in a different way, the presumption of payment from the lapse of over twenty years is not overcome by the facts alleged in the bill, treating the kinship of the parties and the alleged acknowledgment by Miss Force and Mrs. Spear merely as evidence to overcome a rebuttable presumption of facts.

(5) That inasmuch as the mortgagee's estate is not recognized as existing either at law or in equity, after the debt which it secures has ceased to exist, the presumption of payment in this

case at law is a bar to an action of ejectment on the mortgage and in equity is a bar to a suit to foreclose.

Of course, the bill stands, so far as now appears, against the owners of the undivided one-third of the mortgaged premises who, in 1902, by this assignment, acknowledged the mortgage debt and the estate of the mortgagee, and particularly against Munson Force, 2d, who, after making the assignment on May 1st, 1902, executed another mortgage to the complainant covering his interest in the land to secure the balance of his debt to the complainant. The general principle, I think, is settled in New Jersey, so far as the same relates to the class of cases with which we are dealing, that an acknowledgment which interrupts the continuance of adverse possession, or makes a new date for the calculation of the period necessary for the establishment of the presumption of payment, must be made by the party whose rights are affected by such acknowledgment.