Shipman *v.* Cook et al.

DANIEL M. SHIPMAN *vs.* JOHN COOK and others.

1. Though the delivery of a bill or note, either of the debtor or of a third party, is not payment of a precedent debt, but merely suspends the remedy, yet if the holder be guilty of laches, it operates as a complete satisfaction.

2. Where the note of a third party is endorsed by a mortgagor to the mortgagee, and is accepted by him as a *conditional* payment upon the bond, the mortgagor is entitled, *as endorser*, to a notice of protest or dishonor. If the holder of the note fail to give such notice, the mortgagor is discharged not only from liability as endorser, but also from liability *pro tanto* upon the bond.

3. If such note be accepted as absolute payment on the bond, and the payment of the note be guaranteed by the mortgagor, the guaranty will not restore the obligation. The mortgagor would be liable on his contract of guaranty, but his indebtedness upon the bond and mortgage would not be revived.

4. Gross laches and long delay on the part of the complainant in a simple foreclosure case, in commencing and prosecuting his suit, is unjust and oppressive to the defendant, and is a strong circumstance against the justice of the complainant's claim.

*Vroom,* for complainant, cited 4 *Johns. Ch. R.* 616; 9 *Vesey* 563.

*Vanatta,* for defendants, cited *Story on Prom. Notes,* § 117; *Wiseman* v. *Lyman,* 7 *Mass.* 286; *Tapley* v. *Martens,*

8 *T. R.* 451; *Camidge* v. *Allenby,* 6 *Barn. & Cress.* 373; *Alderson* v. *Langdale,* 3 *Barn. & Ad.* 660.

THE CHANCELLOR. The only question now to be decided is, whether the mortgage which the complainant seeks to foreclose, has been satisfied. The defendant claims certain credits upon the mortgage, which are disputed by the complainant.

The first subject of controversy is a promissory note of John A. Kitchell, for $80, payable to the order of the defendant, and by him endorsed to the complainant. The note bears date April first, 1833, and was endorsed to the complainant before its maturity. The defendant testified that the note was delivered in part payment of the mortgage debt. The complainant states that the understanding was that it was to be good on the bond, provided the money was paid. That the note never has been paid, is admitted. The complainant further testifies: " I endorsed it on the bond at the time he gave it to me ; at the same time he put his name on the back of it." He identifies the endorsement referred to, which is as follows: " Received, twenty-fourth June, 1833, of John Cook, twenty-eight dollars, for one year's interest on this bond. $28. Daniel M. Shipman. By note of J. A. Kitchell, which, when paid, will be in full for the same." The last clause of the endorsement is not only after the signature, but bears unequivocal evidence of not being a part of the original endorsement, as it is written with a different pen and with different ink. It can add nothing whatever to the weight of the parol evidence of the complainant. Why the endorsement relates to the interest only, and not to the entire amount of the note, is not satisfactorily explained. Both parties agree that the whole note was to be credited on the bond. In the absence of satisfactory evidence as to the terms upon which the note was agreed to be accepted, whether as an absolute or conditional payment, resort must be had to the legal operation of the transfer.

Though the delivery of a bill or note, either of the debtor

or of a third party, is not payment of a precedent debt, but merely suspends the remedy, yet if the holder be guilty of laches it operates as complete satisfaction. *Camidge* v. *Allenby*, 6 *Barn. & Cress.* 373; *Alderson* v. *Langdale*, 3 *Barn. & Ad.* 660; *Denniston* v. *Imbrie*, 3 *Wash. C. C. R.* 396; *Brower* v. *Jones*, 3 *Johns. R.* 230; *Byles on Bills* 303; *Story on Prom. Notes*, § 117.

No notice of protest or dishonor of the note was given to the defendant. To this, as endorser, he was unquestionably entitled. By this laches on the part of the holder the defendant was discharged, not only from liability as endorser, but from liability *pro tanto* upon the bond. By reason of the laches, the note operated as complete satisfaction of the indebtedness for which it was received. To this it is answered that the defendant occupies the position of a guarantor. Admitting the fact to be so, it is by no means clear that the laches of the holder was not such as to charge him with the loss. But the fact is not satisfactorily established that he was a guarantor. The defendant himself swears that the guaranty which now appears over his name, was not there when he endorsed the note. Another witness testifies that he heard the complainant say, after the maturity of the note, that he had been mistaken as to the party whose name was signed to the note, and that he feared the endorser would escape also. These witnesses testify as to a very ancient transaction, and standing alone it would be unsafe to rely upon their testimony. But it is remarkable that, although the complainant sued the maker of the note and failed to recover the debt for want of property, no claim was ever made against the defendant on the contract of guaranty, nor was a dollar of principal or interest paid on the mortgage debt for eleven years after the date of the alleged guaranty. Again: if the note was taken only as a conditional payment upon the mortgage debt, why should the complainant have asked from the mortgagor a guaranty of the note? If the note was dishonored, having been accepted only as a *conditional payment*, of what avail was the guaranty of the de-

fendant? His personal liability for the debt remained as obligor upon the bond, as well as the security of the mortgage. There was no reason for asking a guaranty. It did not add a jot to the complainant's security. If that guaranty be in fact genuine, it affords the strongest corroboration of the defendant's evidence, that the note was accepted as payment upon the bond. If so, that ends the controversy. For if the note was accepted as absolute payment on the bond, it is clear that the guaranty will not restore the obligation. The defendant would be liable on his personal contract of guaranty, but his indebtedness upon the bond and mortgage would not be revived.

The defendant also claims allowance for the value of cattle, hogs, corn, and spirits, delivered to the complainant as payment on said mortgage debt, between the years 1833 and 1837, and not credited on the bond. The delivery of most of the articles is clearly proven, to an amount sufficient to satisfy the mortgage. The complainant himself admits that they were delivered to, and received by him, as payments on account of the mortgage. But he insists that the value of the property was included in the money receipts endorsed upon the mortgage, duplicates of which were furnished to the defendant. The defendant, on the other hand, testifies that he received those receipts from the complainant; he saw them signed, and he paid the sums of money for which they were given. The receipts themselves are given for so much money paid. They contain no intimation that cattle, corn, or other chattels, constituted any part of the amount. I find no satisfactory evidence that the receipts are not what they purport to be—receipts for money paid.

The complainant's unsupported evidence cannot overcome the testimony of the defendant, corroborated by the plain language of the receipts. It appears moreover from the complainant's evidence, that he had an entry in his books, of the articles thus furnished by the defendant on account of the bond. That book the complainant was notified to pro-

duce in evidence. He failed to do so, alleging that it was lost. What is still more significant, the defendant testifies that when called on for the payment of this debt, he saw in the hands of the person who was then the plaintiff's attorney, a list of the articles thus furnished. This list the attorney refused to deliver to the defendant, but he did exhibit the note, and told him that he (the attorney) would allow the articles, if the defendant would settle and pay the note. This testimony is so important in its bearing upon the cause, that the complainant was bound, in justice to himself and to the court, to have contradicted or explained it. Failing to do so, it must be taken most strongly against him. It is shown that although the attorney has ceased to act, and has removed from the state, he was in the state while the testimony was being taken. It is no excuse for the complainant to allege that the attorney left the state unexpectedly. If his evidence could not have been taken here, it might have been taken by commission at the place of his residence.

Another circumstance has impressed my mind unfavorably in regard to the justice of the complainant's demands. This difficulty originated thirty years ago. The complainant had it in his power at any time to have foreclosed the mortgage and have the controversy settled. He forbore to take this step until the defendant absolutely refused to make further payments upon the mortgage. The bill was at length filed on the fourteenth of January, 1849. No testimony was taken until ten years after the defendant's answer was on file, and then not until an order of the court was made requiring him to proceed. After the evidence was closed, the clause again slumbered until the complainant, on the motion of the defendant, was ordered to bring the cause to hearing, or have his bill dismissed. A simple case for foreclosure has thus been pending in the court, without an obstacle interposed by the defendant, for a period of over fourteen years. This is surely not the conduct of a party confident in the justice of his cause, and seeking the vindication of his rights.

It is eminently unjust and oppressive to the defendant. There is no need of a reference to a master. If the credits are allowed, it is clear that the complainant's debt is satisfied.

The bill must be dismissed.