227 N.J. Super. 602 (1988)
548 A.2d 236
AARON LAST, PLAINTIFF-APPELLANT,
v.
AUDUBON PARK ASSOCIATES, AND AUDUBON DEVELOPMENT CORPORATION, DEFENDANTS-RESPONDENTS, AND UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, ENERGY TRIM, INC. AND THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 15, 1988.
Decided September 28, 1988.
*603 Before Judges KING, GAULKIN and D'ANNUNZIO.
Louis E. Della Torre, Jr., argued the cause for appellant (Schumann, Hession, Kennelly & Dorment, attorneys).
Raymond T. Lyons, Jr., argued the cause for respondent (Schwartz, Tobia & Stanziale, attorneys).
Harry Haushalter, Deputy Attorney General, argued the cause for intervenor, Attorney General of New Jersey.
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
In this suit to foreclose a mortgage the plaintiff relies on Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), to avoid the effect of a judgment entered pursuant to the In Rem Tax Foreclosure Act (1948) (the Act), N.J.S.A. 54:5-104.29 et seq.
The mortgage was executed in 1943. It encumbered property in Jersey City consisting of a 26-unit apartment house. Subsequently, title to the property was conveyed to plaintiff's friend, Louis Wahl. In April 1963, less than one month before the final payment on the mortgage was due, the mortgage was assigned by Phoenix Mutual Life Insurance Company to Amber Realty, a corporation owned by plaintiff. Shortly thereafter, the mortgage was extended by an agreement between Louis Wahl and Amber Realty Corporation. In 1969, the mortgage *604 was assigned to plaintiff individually. In 1971 when Louis Wahl died, the principal amount due was $14,400. Subsequent to Louis' death, his son, Marvin Wahl, and plaintiff entered into an agreement that plaintiff would accept interest payments only until Louis Wahl's estate was settled. The last interest payment was made on January 12, 1978. Thereafter, though the mortgage was in default, plaintiff took no action to enforce his rights under it.
In 1978, taxes on the property were in arrears and the City of Jersey City purchased a tax sale certificate covering the property. In January 1980, Jersey City commenced foreclosure under the Act and final judgment of foreclosure under the Act was entered on April 22, 1980. Plaintiff did not receive actual notice of the in rem foreclosure proceedings. Notice to the plaintiff was effected by publication and posting pursuant to N.J.S.A. 54:5-104.42 and R. 4:64-7.
On August 25, 1982, the City of Jersey City conveyed the property to Audubon Park Associates. By deed of even date Audubon Park Associates conveyed the property to Audubon Development Corporation. Audubon acquired the property to develop it and other adjacent properties into 169 low income subsidized rental units under a federal housing program.
Plaintiff testified that in "early 1983" he drove past the property and noticed work being performed on it in the nature of demolition and renovation. He ordered a title search which he received in April 1983. The search revealed that the lien of his mortgage had been cut off by the tax foreclosure judgment. Plaintiff accepted the fact that his mortgage had been extinguished and gave the matter no further thought until August 1984 when a friend of his, a lawyer, brought the Mennonite decision to plaintiff's attention.[1] Plaintiff is also a lawyer. Mennonite held that the due process clause of the Fourteenth Amendment requires that actual notice of a tax foreclosure be *605 given to a mortgagee whose mortgage is a matter of public record and whose identity and address are reasonably ascertainable.
Although under Mennonite, plaintiff's mortgage survived the tax foreclosure judgment, plaintiff failed to assert any rights under his mortgage or under the Mennonite decision until October 1984, approximately 15 months after Mennonite had been decided and 18 months after he read the title search. At that time he wrote to Audubon, informing it of his claim under his mortgage for the principal sum of $14,400 "plus interest from January 12, 1978, in the sum of $111.53 compounded monthly." Plaintiff's letter declared the mortgage to be in default and warned Audubon that unless the principal and interest were paid by November 1, 1984, that he would proceed to enforce the mortgage. Audubon rejected plaintiff's claim. On June 6, 1986, approximately two years after learning of the Mennonite decision and almost two years after his demand letter to Audubon, plaintiff commenced this foreclosure action.
Plaintiff and Audubon moved for summary judgment. The motions were denied and the matter proceeded to trial on a stipulation of facts and the testimony of plaintiff and of John Skelly, general partner of Audubon. In a letter opinion, the trial judge ruled that the Mennonite decision was to be given prospective effect only and, in the alternative, that plaintiff "did not act with reasonable diligence and has failed to comply with the conditions precedent of N.J.S.A. 54:5-104.67 and R. 4:50-2." He also ruled that "setting aside the foreclosure judgment would place an inequitable and disproportionate hardship on defendant Audubon for Last's failure to move against the foreclosure judgment in a more timely fashion or `within a reasonable time.'" The trial judge found that Audubon had placed substantial reliance on the foreclosure judgment and had invested approximately nine million dollars in its housing project.
*606 We do not address the retroactive application of Mennonite. We affirm because plaintiff's challenge of the tax foreclosure judgment, a prerequisite to the successful prosecution of his mortgage foreclosure, was untimely.
Initially we note that the Chancery Division had subject matter jurisdiction of the tax foreclosure. N.J.S.A. 54:5-104.29 et seq. "[A] court having subject matter jurisdiction is nevertheless empowered to act in a specific controversy [within its subject matter jurisdiction] only if and to the extent it has jurisdiction over either the litigants or the subject matter of the controversy itself...." Drobney v. Drobney, 146 N.J. Super. 317, 322 (App.Div. 1977). The Chancery Division had in rem jurisdiction because the property is within New Jersey and subject to the court's control. Ibid. Moreover, plaintiff received constructive notice through publication and posting. R. 4:64-7(b) and (d). Actual notice was given to owners of record as required in R. 4:64-7(c) and Tp. of Montville v. Block 69, Lot 10, 74 N.J. 1 (1977). Under Mennonite, the defect in the procedure followed was limited to the failure to give actual notice to plaintiff. That defect would not affect the judgment's validity as to other interests in the property whose equity of redemption was foreclosed. Therefore, plaintiff sought to excise only that portion of the judgment applicable to his mortgage. Even if the plaintiff was successful, the tax foreclosure judgment would stand as to other interests in the property. Consequently, the Mennonite defect did not render the judgment void. It rendered voidable that portion of the judgment applicable to plaintiff's mortgage. Having made these preliminary observations, we proceed to the merits.
In Garza v. Paone, 44 N.J. Super. 553 (App.Div. 1957), the court affirmed denial of Paone's motion to set aside a judgment. Paone had been sued for personal injuries resulting from an automobile accident. The Appellate Division agreed that there was no in personam jurisdiction as to defendant Paone because a copy of the summons and complaint had not been served upon him personally as required by the existing *607 court rules. The court characterized the judgment as "absolutely void and of no legal effect for any purpose...." Id. at 557. But the court ruled that defendant had an obligation to apply for relief from the judgment within a reasonable time:

R.R. 4:62-2 governs the procedure for a motion to relieve a party from a final judgment and it provides that the motion "shall be made within a reasonable time" (and in certain instances not here applicable the motion must be made not more than one year after entry of the judgment). Among the grounds for relief under the rule is `(d) the judgment or order is void.' Thus the mere fact that the judgment may be regarded as void for lack of personal jurisdiction will not automatically authorize a court to relieve a party from its operation on motion. He must make his motion within a reasonable time.
The present rule of court supersedes the previous general rule that void judgments may be vacated at any time and that laches and estoppel will not sustain such a judgment. McLaughlin v. Cross, 68 N.J.L. 599 (Sup.Ct. 1902); Westfield Trust Co. v. Court of Common Pleas, 115 N.J.L. 86 (Sup.Ct. 1935), affirmed 116 N.J.L. 190, 191 (E. & A. 1936); 49 C.J.S., Judgments, § 288, p. 523. Determination of whether the application is made within a reasonable time, within the intendment of the present rule of court, rests in the sound discretion of the trial court, equitable principles constituting the guide. Shammas v. Shammas, 9 N.J. 321, 327, 328 (1952); Wilford v. Sigmund Eisner Co., 13 N.J. Super. 27, 33 (App.Div. 1951). The time limitations of the rule express "the policy of terminating litigation within a reasonable time, which is essential to the proper administration of justice." Naglieri v. Trabattoni, 14 N.J. Super. 54, 57 (App.Div. 1951). [Id. at 557-558].
The court held that plaintiff's application to set aside a judgment made approximately four years after its entry had not been made within a reasonable time:
We are satisfied that defendant has deliberately waited for years to apply for relief against a long-known void judgment simply because it was not convenient for him to do so earlier, and that only the pinch of the need for a driving license has at last brought him to court. These are not circumstances of the kind which the rule of court envisages as an equitable basis for relief `within a reasonable time.' The adverse exercise of discretion by the trial court ought not to be interfered with upon the present showing. LaBell v. Quasdorf, 116 N.J.L. 368, 373 (Sup.Ct. 1936). [Id. at 559].
In the present case, plaintiff had been aware of the foreclosure judgment for 18 months before he served a demand letter on Audubon. Mennonite had been published approximately 15 months before plaintiff's demand letter. Plaintiff waited for almost two years after he gained personal knowledge of Mennonite before filing his foreclosure complaint. *608 Plaintiff's delay in asserting his rights was calculated and, therefore, more egregious than the delay in Garza. Plaintiff was aware that while he waited, Audubon was adding value to the property and to his mortgage[2] through its rehabilitation of the property and its conversion into part of a multi-million dollar housing project. Moreover, plaintiff was aware that the tax foreclosure judgment formed an important link in the property's public chain of title. For these reasons we are satisfied that the plaintiff did not act within a reasonable period of time to assert his rights to attack the tax foreclosure judgment. See R. 4:50-2. Cf. Sourlis v. Borough of Red Bank, 220 N.J. Super. 434, 436 (App.Div. 1987) (action to "vacate an in rem tax foreclosure judgment on the ground of lack of jurisdiction should be brought within a reasonable time, cf. 4:50-2"). But cf. Benoit v. Panthaky, 780 F.2d 336 (3rd Cir.1985) (statute of limitation does not bar action to set aside tax sale based on constitutional defect); Ford v. Willits, 237 Kan. 13, 697 P.2d 834 (Sup.Ct. 1985) (statute of limitation no bar to quiet title action where there was no process by publication or personal service).
We also conclude that plaintiff was guilty of laches. If plaintiff's failure to assert his rights under Mennonite was not calculated, he was clearly negligent. Audubon relied upon the tax foreclosure judgment in good faith and vested time, effort and money in its housing project while plaintiff silently observed these efforts from the sidelines. See Ford v. Willits, supra, (laches may be applicable to bar an action to set aside a void judgment); Oystermen's National Bank of Sayville v. Edwards, 112 N.J. Eq. 148 (Ch. 1932). "[T]he defense of laches involves more than the mere lapse of time; its essence is estoppel. It involves a combination of negligence on the part of complainant, good faith on the part of defendant, and prejudice *609 occasioned, or the likelihood thereof, to defendant." Id. at 150. Cf. Swinley v. Force, 78 N.J. Eq. 52 (Ch. 1910); Shipman v. Cook, 16 N.J. Eq. 251 (Ch. 1863). But cf. Applegate v. Quackenbush, 1 N.J. Super. 327 (Ch.Div. 1948); Wilson v. Stevens, 105 N.J. Eq. 377, 387-389 (Ch. 1929).
AFFIRMED.
NOTES
[1] Mennonite was decided in June, 1983.
[2] The uncontroverted evidence establishes that in 1982, when Audubon acquired title, the property had no tenants, no utilities, had been vandalized and damaged by fire.