695 A.2d 345

JANIS WOHLEGMUTH AND VITO MATTARELLA, PLAINTIFFS–RESPONDENTS, v. 560 OCEAN CLUB, DEFENDANT, AND ANTHONY J. SIMEI, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 13, 1997—Decided June 24, 1997.

Before Judges DREIER, NEWMAN and VILLANUEVA.

*Michael M. Land*, attorney for appellant.

*Morelli & Rinaldi*, attorneys for respondents (*Mark A. Rinaldi*, on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

Defendant, Anthony J. Simei, appeals from the denial of his motion to reconsider the denial of a previous motion to vacate a default judgment entered against him on September 28, 1990. The judgment was docketed within two weeks, and a writ of execution issued ten days later. Plaintiffs contended in their complaint that defendant Simei was an officer, director or principal of defendant 560 Ocean Club and that he was personally responsible to plaintiffs for the refund of approximately $21,000 arising out of a lease of an Atlantic City condominium timeshare. Defendant denies that he was an officer or director of 560 Ocean Club, which was not a corporation but a partnership. Nor was he a partner or principal of the partnership. He claims he only worked part-time as a bookkeeper and accountant. He asserts he had only one brief dealing with plaintiffs and in no way participated personally in the lease transaction.

■ The sole method of service upon both the partnership defendant and Simei was service on a secretary employed by the partnership at its place of business, although plaintiffs also contend that additional copies of the summons and complaint were sent by regular and certified mail to defendant. The service at defendant's place of business is an improper mode of service on a resident individual. *See R.* 4:4–4(a)(1). Service would have been proper only if 560 Ocean Club was defendant's sole proprietorship, *R.* 4:4–4(a)(4), but there is no allegation that this is so. The service by regular and certified mail is a permitted alternative form of service on a resident individual, but cannot support a default judgment. *See R.* 4:4–4(c). Even if defendant were a partner of 560 Ocean Club, our court rules do not permit service of process on him by serving a secretary employed by the partnership, unless the secretary was authorized to accept service on defendant's behalf. *R.* 4:4–4(a)(1); *see* Schnitzer & Wildstein, *New Jersey Service 1954 to 1967,* annotation (e) on *R.* 4:4–4, AIV–56 (1982).

■ Plaintiffs relied on the sheriff's return of service, which, if examined, would have revealed the deficient service. The return of service contained the caption of the case listing the plaintiff and only The 560 Ocean Club as a defendant, and then stated that the summons and complaint had been served *"April 5, 1990* on *Anthony J. Simei* by delivering a copy of each [the summons and complaint] personally to: *Jan Valvo—Secy.* at [1] *who is authorized to accept process of service on behalf of the above The 560 Ocean Club 3100 Boardwalk Atlantic City, N.J."* (The underlined portion was typed on the otherwise printed return of service form.) Thus the return of service itself apparently indicates only that the secretary was authorized to accept service on the part of the partnership. There is at best a factual issue whether she could accept service on defendant's behalf.

Plaintiffs also argued in the trial court and here that service was properly effected because it complied with the service requirements of *R.* 4:4–4(a)(4) through (6) or *R.* 4:4–4(b)(1)(C). These sections, however, are applicable to service upon an individual proprietor where the action arises out of the business, upon a partnership and upon an unincorporated association or corporation, or to service by mail outside of the State of New Jersey. Since service on defendant by regular and certified mail under *R.* 4:4–4(c) did not result in defendant's answer or otherwise appearing in the suit, such mail service was ineffective.

■ The court rules provide little help in determining whether defendant had any duty to bring this issue before the court. *Rule* 4:6–2(b) requires a motion for lack of jurisdiction over the person to be made before pleading. In this case there was no pleading. If an answer had been filed, *R.* 4:6–3 permits a motion to be made to dismiss for such lack of jurisdiction within ninety days after

---

[1] The word "at" is printed on the form, but the way the form was typed it appears as noted before the word "who." It may have been meant to be inserted before the name of the club or the address. There is therefore an ambiguity whether the secretary might have been authorized to accept service on Simei's behalf.

service of the answer, provided the defense was included in the answer. *Rule* 4:6–7 provides for a waiver of the defense if the motions are not made. The rules, however, do not provide for an affirmative duty on the part of a party who was improperly served to take any protective action. We would add a proviso, as explained later, that a defendant's conduct after being notified of the action may, however, estop the defendant from challenging the service of process.

Defendant admits that in 1990 he knew of the entry of the judgment against him but thought that the judgment had no effect upon him because the business was taking care of the matter. In fact, plaintiffs contended that in late 1990, after the judgment had been docketed, defendant purchased some real estate (presumably with a mortgage, although this is not stated), and his judgment search did not reveal this judgment. He therefore assumed that 560 Ocean Club had resolved the matter. Apparently, plaintiffs made no claim against defendant during the ensuing six-year period, although Simei had lived in the same residence for over nine years.

The docketed judgment came to light when defendant sold real estate in 1996.[2] The amount of the judgment was required to be placed in escrow, and thereafter when defendant's motion to vacate the judgment was denied, the escrow balance was paid to plaintiffs. The court permitted oral argument of defendant's motion for reconsideration, but again denied defendant's motion to vacate the judgment. The judge stated that since defendant had known of the judgment for six years and had not taken any timely action to vacate, it would be unfair to require plaintiffs now to prove the relationships and their right to reimbursement after so much time had passed.

---

[2] We do not recite these facts to imply that plaintiffs had any duty to do more than docket the judgment, which would be a lien on any real estate owned by defendant for the next twenty years. *N.J.S.A.* 2A:14–5; 2A:16–1.

This is not a case where a defendant had no notice of the institution of the action or the entry of a judgment. Defendant does not deny that the service at his place of business and the regular and certified mail service at his residence resulted in his receiving the summons and complaint and being fully aware of the claim against him. Whatever may have been defendant's assumption concerning the payment of the judgment, the fact remains that he knew of its entry and made no inquiries concerning its status.

But there may be extenuating circumstances here. According to a certification filed by the partnership's former attorney, he also had represented Simei in 1990 and had obtained from plaintiffs' attorney an oral agreement "that he would vacate or satisfy the judgment as to Anthony Simei only." The attorney further stated that he believed "that I sent him a document to sign which would have accomplished this end." Unfortunately, the unpaid bills to the partnership required the attorney to withdraw, and he placed his ten feet of files in storage. He further certified that he "completely lost sight of the fact that [plaintiffs' attorney] apparently never followed through on his promise by returning the signed pleadings to me which would have either vacated or satisfied the judgment as to Mr. Simei."

Based upon these representations of the partnership's former attorney, Simei may have a defense that the judgment, if otherwise effective, should be vacated based upon the alleged agreement with plaintiffs' attorney. Equity regards that as done which ought to be done. *See Goodell v. Monroe,* 87 *N.J. Eq.* 328, 335, 100 *A.* 238 (E. & A.1917); *Summonte v. First Am. Title Ins. Co.,* 180 *N.J.Super.* 605, 436 *A.2d* 110 (Ch.Div.), *aff'd o.b.,* 184 *N.J.Super.* 96, 445 *A.2d* 409 (App.Div.1981), *certif. denied,* 89 *N.J.* 418, 446 *A.2d* 148 (1982). In effect, plaintiffs can be estopped from enforcing this judgment if defendant has proceeded in his affairs for the past several years relying upon plaintiff's attorney's representation that the judgment against defendant had in fact been satisfied or was otherwise prejudiced.

■ If, however, there is no basis for such estoppel against plaintiff, we must then approach the issue of whether a judgment, allegedly void because of improper service of a summons and complaint, should nevertheless be enforced. It is clear that in such an instance the presence or absence of a meritorious defense cannot alone control whether the judgment must be vacated. *See Peralta v. Heights Med. Ctr., Inc.,* 485 *U.S.* 80, 108 *S.Ct.* 896, 99 *L.Ed.*2d 75 (1988). Our focus, therefore, must be on the effect of the defective service which nevertheless provided defendant with actual knowledge of the pendency of the action. This is not a due process case, since due process requires only "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 *U.S.* 306, 314, 70 *S.Ct.* 652, 657, 94 *L.Ed.* 865, 873 (1950). It is the failure to give such notice that "violates 'the most rudimentary demands of due process of law.'" *Peralta v. Heights Med. Ctr., Inc., supra,* 485 *U.S.* at 84, 108 *S.Ct.* at 899, 99 *L.Ed.*2d at 81 (quoting *Armstrong v. Manzo,* 380 *U.S.* 545, 550, 85 *S.Ct.* 1187, 1190, 14 *L.Ed.*2d 62 (1965)). The issue here is the effect of failing to comply with the Rules of Court.

Forty years ago this issue was considered by Judge Conford in *Garza v. Paone,* 44 *N.J.Super.* 553, 131 *A.*2d 32 (App.Div.1957). Over a dissent by Judge Freund, who would have vacated the default, the majority concluded that although the judgment was void, the motion to relieve the defendant from the judgment was out of time, and thus the void judgment could not be vacated after four years had elapsed without a showing of excusable neglect. *Id.* at 558, 131 *A.*2d 32. The court agreed, however, that:

> There was consequently no *in personam* jurisdiction against the defendant and the judgment is absolutely void and of no legal effect for any purpose, whatever we may determine as to the merits of the present appeal. However, it does not follow that defendant is therefore necessarily entitled to the specific form of relief from the judgment he sought below [an order setting aside the judgment and opening the default].
>
> [*Id.* at 557, 131 *A.*2d 32 (citations omitted).]

If we were to follow *Garza* in the case before us, we would be required to determine that the judgment was void but should not be vacated; since the judgment would have had no effect, the execution was improper, and the funds turned over to plaintiffs would be returned to defendant.

But *Garza* was not the last word. The doctrine of equitable estoppel and laches may also apply against defendant. In this case, defendant through counsel attempted to have the judgment against him vacated not on the basis that he was improperly served, but rather on the basis that he was not personally responsible for the actions of his employer. Defendant's silence concerning the question of service at that time might well estop him from raising it years later. Plaintiff's proofs concerning the actual service and the secretary's authority may have been prejudiced by the passage of so much time. Similarly, defendant may also be guilty of laches in not revealing this potential defense. "Laches is a defense when there is delay, unexplained and inexcusable, in enforcing a known right, and prejudice has resulted to the other party because of that delay." *Gladden v. Public Employees' Retirement Sys. Trustee Bd.*, 171 *N.J.Super.* 363, 370–71, 409 *A.*2d 294 (App.Div.1979). Defendant's silence concerning the issue of inadequate service might well estop him from raising the issue now. "[H]e who is silent when conscience requires him to speak, shall not be permitted to speak when conscience requires him to be silent." *Besson v. Eveland*, 26 *N.J. Eq.* 468, 472 (Ch. 1875).

The courts have considered such principles in similar cases. In *Sonderman v. Remington Construction Co.*, 127 *N.J.* 96, 603 *A.*2d 1 (1992), Justice Stein, in a concurring opinion involving unrelated issues concerning a failure to record an order vacating a tax foreclosure judgment, read *Garza* as announcing "that void judgments would not be vacated where laches and estoppel sustain the judgment." *Id.* at 114, 603 *A.*2d 1. This created the legal paradox noted by Judge Freund in his dissent in *Garza:* "[A] void judgment that could neither be set aside nor enforced." *Ibid.* Justice Stein noted, however, that there had been intervening

authority, namely, *Berger v. Paterson Veterans Taxi*, 244 *N.J.Super.* 200, 581 *A.*2d 1344 (App.Div.1990).

In *Berger*, as in the case before us, *in personam* jurisdiction was lacking because plaintiff served defendant's employer's agent rather than defendant himself. Unlike the case before us, there was no indication that defendant had actual knowledge of the suit until after the judgment. Yet in *Berger*, we determined to depart from *Garza* and vacate the default judgment. *Id.* at 206, 581 *A.*2d 1344. We noted, however, that the underlying cause of action was not yet time barred and that the suit could still proceed. *Ibid.* Judge Landau there held that where there is a "want of *in personam* jurisdiction, the resulting void default judgment must *ordinarily* be set aside." *Id.* at 205, 581 *A.*2d 1344 (emphasis added).

█ Justice Stein in his *Sonderman* concurrence also noted, citing *Berger*, that there may be exceptions to this rule in situations where there is laches or detrimental reliance. He also cited:

> *Ford v. Willits*, 237 *Kan.* 13, 697 *P.*2d 834 (1985) (although laches 'should ordinarily not be a defense to a motion to open a judgment that is utterly void, there may be unusual circumstances * * * where it would be inequitable not to apply the doctrine'). Thus, most courts sparingly invoke equitable principles to deny motions to set aside void judgments.
>
> [*Sonderman, supra*, 127 *N.J.* at 114].

In appropriate circumstances, therefore, the "void" judgment may have some effect.

The issue was also discussed by Judge D'Annunzio in *Last v. Audubon Park Associates*, 227 *N.J.Super.* 602, 548 *A.*2d 236 (App.Div.1988), *certif. denied*, 114 *N.J.* 491, 555 *A.*2d 613 (1989). There, the plaintiff mortgagee had assumed that his mortgage had been cut off by a tax foreclosure judgment which he later determined was voidable. He waited eighteen months before making demand upon the new owner, during which time the property was rehabilitated and converted into part of a multi-million dollar housing project. *Id.* at 608, 548 *A.*2d 236. As an attorney, plaintiff was or should have been aware that the foreclosure

judgment had been relied upon by the new owners. *Ibid.* The court therefore determined that

> plaintiff did not act within a reasonable period of time to assert his rights to attack the tax foreclosure judgment.... We also conclude that plaintiff was guilty of laches ... [The new owner] relied upon the tax foreclosure judgment in good faith and vested time, effort and money in its housing project while plaintiff silently observed these efforts from the sidelines.
>
> [*Id.* at 608, 548 *A.*2d 236].

Although the judgment in *Last* was voidable rather than void, Judge D'Annunzio there also cited the Kansas case of *Ford v. Willits, supra,* 237 *Kan.* 13, 697 *P.*2d 834, for the proposition that "laches may be applicable to bar an action to set aside a void judgment." *Last, supra,* 227 *N.J.Super.* at 608, 548 *A.*2d 236.

If, as defendant contends, he had no knowledge that the judgment against him had not been vacated, and in fact could reasonably assume that it had, then the doctrines of equitable estoppel and laches against him might be inapplicable. But even in such an instance, the judgment may still have to be enforced, notwithstanding inadequate service of process, because plaintiffs might prevail on their additional claim that defendant expressly or impliedly waived the defense of lack of jurisdiction. *See City of Newark v. (497) Block 1854,* 244 *N.J.Super.* 402, 408, 582 *A.*2d 1006 (App.Div.1990) (citing *Restatement (Second) of Judgments* § 66 (1982)). The *Restatement* section notes that relief from an invalid default judgment will be denied if the defendant manifested an intention to treat the judgment as valid after having actual notice of it and granting relief would impair another person's substantial interest in reliance on the judgment.

This principle was applied in *Rosa v. Araujo,* 260 *N.J.Super.* 458, 616 *A.*2d 1328 (App.Div.), *certif. denied,* 133 *N.J.* 434, 627 *A.*2d 1140 (1993), where this court was faced with the problem of a default judgment allegedly void for lack of personal jurisdiction in that the complaint was served on a person allegedly not a member of defendant's household. *Id.* at 462, 616 *A.*2d 1328. Judge Keefe there stated that

not every defect in the manner in which process is served renders the judgment upon which the action is brought void and unenforceable. The requirement that a court have personal jurisdiction over a defendant is designed to protect the defendant's individual liberty interests flowing from the Due Process clause. Thus, the court rules which describe the manner in which process is to be served must be read in the context of effecting due process.... Where due process has been afforded a litigant, technical violations of the rule concerning service of process do not defeat the court's jurisdiction.

[*Id.* at 462–63, 616 *A.*2d 1328 (citing *O'Connor v. Altus,* 67 *N.J.* 106, 127–28, 335 *A.*2d 545 (1975)) (other citations omitted).]

There, as here, defendant actually received the summons and complaint in a timely manner and consulted an attorney. *Id.* at 464, 616 *A.*2d 1328. In *Rosa,* this court found a waiver of the defendant's right to contest the judgment, notwithstanding the deficient service. *Ibid.* Plaintiff should therefore also have been given an opportunity to prove waiver, as well as estoppel or laches, as bases to avoid the defense of lack of *in personam* jurisdiction.

To summarize: if plaintiffs' attorney failed to dismiss the action or vacate the judgment after promising to do so, the judgment may be vacated on the basis of an equitable bar to enforcement or as a waiver of plaintiffs' claim. However, if plaintiffs are not so barred, and if defendant led plaintiffs to believe that there was no defect in the service of process at a time when they could have re-served defendant or preserved proofs of defendant's culpability in the transaction, defendant may be estopped or barred by laches from challenging either the service of process or the judgment itself. He may also be found to have waived the defense, either expressly or impliedly. The service may even have been proper, given the ambiguitable return of service. We see all of these as factual issues, especially in light of the certifications filed by defendant and his former attorney. If none of these issues prove viable, the trial judge may find the judgment to be void if defendant truly was not served as required by *R.* 4:4–4.

The order denying vacation of the default judgment is reversed, and the matter is remanded to the Law Division for further proceedings in accordance with this opinion.