**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1287-22

TRYSTONE CAPITAL
ASSETS, LLC,

     Plaintiff-Respondent,

v.

DOROTHY T. TOULSON,
THOMAS W. TOULSON,
DEBORAH W. GRISCOM,
as Executor of the Estate of
DOROTHY T. TOULSON, LIVE
WELL FINANCIAL, INC., UNITED
STATES OF AMERICA, SOUTH
JERSEY GAS, and THE STATE OF
NEW JERSEY,

     Defendants,

and

ALLOWAY VENTURES, LLC,
RED CAT PROPERTY RESCUE,
LLC, and MECUM TOULSON, LLC,

     Third-Party Defendants-
     Respondents.

_____

WILMINGTON SAVINGS FUND
SOCIETY, FSB, not individually but
solely as trustee for Finance of
America Structured Securities
Acquisition Trust 2019-HB1,

     Intervenor-Appellant.

_____

Submitted January 16, 2024 – Decided January 29, 2024

Before Judges Chase and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Salem County, Docket No. F-3794-21.

Ashley S. Miller (Akerman LLP), attorney for intervenor-appellant.

Honig & Greenberg LLC, attorneys for respondents, Alloway Ventures, LLC, Red Cat Property Rescue, LLC, and Mecum Toulson, LLC (Adam D. Greenberg, on the brief).

Anthony Louis Velasquez, attorney for respondent Trystone Capital Assets, LLC.

PER CURIAM

Wilmington Savings Fund Society, FSB ("Wilmington"), appeals the October 18, 2022 denial of its motion to set aside a sheriff's sale and December 9, 2022 denial of its motion for reconsideration. Because the trial court correctly applied the doctrine of laches, we affirm.

In 2011, Dorothy T. Toulson secured a line-of-credit mortgage on her home at 33 Market Street in Salem ("the property") through a note to Genworth Financial Home Equity Access, Inc. ("Genworth"), in the amount of $165,000. To secure payment of the note, Toulson entered into a reverse mortgage with Mortgage Electronic Registration Systems, Inc. ("MERS"), and conveyed the property to Genworth. The mortgage was properly recorded, and MERS, as nominee for Genworth, was named the mortgagee.

Toulson passed away in 2016 and defaulted on the mortgage loan. MERS assigned the defaulted mortgage to Live Well Financial, Inc. ("Live Well"). The assignment was properly recorded. Live Well filed a foreclosure complaint in September 2017.

In February 2018, the Tax Collector of the City of Salem commenced a public tax sale of the property for unpaid 2018 taxes. The tax sale certificate was sold and assigned to Trystone Capital Assets, LLC ("Trystone"), which properly recorded it.

After Trystone recorded the tax sale, Live Well recorded a lis pendens at the end of July 2018.[1] Live Well then filed a second amended complaint. Live Well's mortgage foreclosure was dismissed in April 2019 but reinstated in June 2020 upon motion. Separately, Live Well filed for Chapter 7 bankruptcy in the District of Delaware in June 2019. Although N.J.S.A. 46:16-4.1 permitted Live Well to record its bankruptcy in the land records, it did not do so.

No redemption of the tax lien was made within two years. As such, in April 2021, Trystone ordered a title search and mailed notices of intent to foreclose. The title search had a "board date" of March 20, 2021, meaning it reflected documents recorded only through that date. Trystone then served Live Well with a thirty-day pre-foreclosure notice on June 14, 2021, pursuant to Rule 4:42-9(a)(5).

After being served with Trystone's pre-foreclosure notice, Live Well assigned the mortgage it held to Wilmington, which recorded it on June 15, 2021. However, Wilmington did not immediately substitute in on Live Well's reinstated mortgage foreclosure action.

---

[1] Rule 4:64-1(a)(1) required Live Well to "receive and review a title search of the public record" to identify others with interest in the property. Although the record is devoid of any mention of the search or the required certification of compliance, Live Well would have been on constructive notice of the tax foreclosure if they complied with the Rule.

A-1287-22

Trystone filed its tax foreclosure complaint on July 21, 2021, after the required thirty-day notice period lapsed. The foreclosure complaint named Live Well, not Wilmington, as the holder of the mortgage. Trystone filed its lis pendens, which was recorded on July 22, 2021. It then conducted a rundown search, which did not reflect Live Well's assignment of the mortgage to Wilmington. On August 9, 2021, Wilmington substituted in for Live Well in the mortgage foreclosure action.

Trystone's tax foreclosure proceeded, and a final judgment was entered in Trystone's favor. A writ of execution was issued on October 14, 2021.

In December 2021, a sheriff's sale took place and resulted in the sale of the property to a successful bidder for $23,000.[2] The successful bidder at the sheriff's sale was Andrew Dunlop who then assigned his bid to his LLCs: Alloway Ventures, LLC, and Red Cat Property Rescue, LLC (collectively "Alloway"). Subsequently, a sheriff's deed was issued and recorded by Alloway.

On December 29, 2021, Alloway took possession of the dilapidated property and started a substantial rehabilitation project. The property had been abandoned and vacant for years, was littered with trash throughout, and had been

---

[2] Typically, the tax foreclosure initiated by Trystone would have ended at final judgment vesting title. However, because of a federal lien, the case was required to go to sheriff's sale.

damaged by fire. The interior ceilings had collapsed, the pipes had frozen and burst, and the wood floors were extensively damaged. Alloway fully restored the property to its current state as a historic late-1800s building. The restoration cost approximately $150,000.

Simultaneously, in December 2021, Wilmington filed another motion in the mortgage foreclosure action to correct the plaintiff's name. That second substitution order was entered January 5, 2022. Wilmington then filed an amended complaint.

Wilmington finally obtained foreclosure judgment on January 26, 2022. When Wilmington requested its own sheriff's sale of the property on February 17, 2022, it learned of the previous sheriff's sale.

Wilmington's counsel then emailed Trystone's counsel advising Live Well assigned the mortgage to Wilmington, which was recorded prior to the filing of Trystone's tax foreclosure complaint, and Trystone's tax foreclosure complaint failed to name Wilmington. Trystone's attorney responded that neither the title search nor the rundown search showed an assignment from Live Well to Wilmington, that the property was sold at sheriff's sale in December 2021, and that the real party in interest was now the successful bidder, Alloway. Trystone further provided Wilmington's counsel with Alloway's full contact information.

6

However, neither Wilmington nor any of its representatives ever contacted Alloway.

Wilmington then filed a motion to intervene in the Trystone tax foreclosure matter on May 3, 2022, which was granted on June 10, 2022. Wilmington thereafter moved to set aside the sheriff's sale on June 22, 2022. The trial court denied the motion on October 18, 2022. The trial court denied a subsequent motion for reconsideration on December 9, 2022.[3]

The trial judge first opined Trystone's title search did not reveal Wilmington's assignment because the cover page of the document recording the assignment left the municipality, block, lot, and property address blank. Because this information was missing, the trial judge determined Wilmington's recording was not completed sufficiently.

However, the crux of the trial judge's opinion was the equitable principle of laches. Specifically, the trial judge determined, "Wilmington had significant time to intervene in this matter and to assert [its] rights, but waited approximately [four] months to do so." During that time, Alloway, "in good

---

[3] Although the motion for reconsideration was mentioned in Wilmington's notice of appeal, it was not briefed. An issue not briefed is waived on appeal. Miller v. Reis, 189 N.J. Super. 437, 441 (App. Div. 1983) (issue not briefed beyond conclusory statements need not be addressed).

faith, continued to make significant improvements to the property and continued to pay property taxes." Ultimately, the trial judge found Wilmington's delay in intervening and moving to vacate the sheriff's sale "inexcusable," and declined to set aside the sale.

In its reconsideration opinion, the trial court recognized that Wilmington claimed there was a two-month and three-day delay[4] between Wilmington learning of the sheriff's sale and filing a motion to vacate the sale on June 22, 2022. Noting that Wilmington learned of the sheriff's sale on February 17, 2022, the court found Wilmington's seventy-five-day delay did not "warrant reconsideration as the reasoning in the [c]ourt's [o]pinion remain[ed] consistent . . . ."

The trial judge addressed Wilmington's argument that the assignment of the mortgage was properly recorded and adequately indexed. Citing its previous opinion, the trial judge explained that according to the exhibits, Wilmington did not include the property address, lot, block, or municipality on the cover sheet. Because Wilmington did not provide any documentation in support of the mortgage being properly recorded and indexed, the court found the motion for

---

[4] The court also recognized its previous description of the delay as being "approximately four-month[s]" was incorrect, although not determinative in its decision.

A-1287-22

"[r]econsideration adds nothing new and leaves the [c]ourt to make a determination on an argument that is already decided."

## II.

We review an order granting or denying a motion to vacate a sheriff's sale for abuse of discretion. <u>United States v. Scurry</u>, 193 N.J. 492, 502-503 (2008). We will find an abuse of discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" <u>U.S. Nat'l Bank Ass'n v. Guillaume</u>, 209 N.J. 449, 467 (2012) (quoting <u>Iliadis v. Wal-Mart Stores, Inc.</u>, 191 N.J. 88, 123 (2010)). Whether a motion for relief has been timely made "rests in the sound discretion of the trial court, equitable principles constituting the guide." <u>Last v. Audubon Park Assocs.</u>, 227 N.J. Super. 602, 607 (App. Div. 1988) (internal citations omitted). We review an order denying reconsideration under the same abuse of discretion standard. <u>Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment</u>, 440 N.J. Super. 378, 382 (App. Div. 2015).

In <u>DelVecchio v. Hemberger</u>, 388 N.J. Super. 179 (App. Div. 2006), we reviewed a motion to vacate a judgment of foreclosure. We stated:

> Our consideration of the arguments raised is governed by the principle that "[t]he decision whether to vacate a judgment on one of the six specified grounds [of <u>Rule</u> 4:50-1] is a determination left to the sound discretion

of the trial court, guided by principles of equity" and that decision must be left undisturbed unless a clear abuse of discretion appears.

[Id. at 187-88 (alterations in original) (quoting F.B. v. A.L.G., 176 N.J. 201, 207 (2003)) (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)).]

We then concluded that despite the tragic circumstances of that case, where the death of a child caused the financial downward spiral of owners who sought to redeem too late, the trial court did not abuse its discretion in applying the principles of equity and declining to vacate the tax foreclosure judgment.

III.

Wilmington believes the sheriff's sale must be vacated for two reasons. First, it contends Trystone did not follow the statutory requirements of Rule 4:65-2. Second, Wilmington maintains equity warrants the vacatur.

A.

Rule 4:65-2 requires a plaintiff to serve notice of a foreclosure sale on every person holding an ownership or lien interest to be divested by the sale and is recorded in the appropriate office. Wilmington argues despite having a lien interest at the time of the sale, the trial court incorrectly found errors with the recording of the mortgage assignment and excused the lack of notice. Wilmington contends N.J.S.A. 46:26A-3, governing prerequisites for recording,

10

does not require a mortgage assignment to include the municipality, block, and lot numbers. Rather, it contends N.J.S.A. 46:26A-3(a)(6) requires only that mortgage assignments state the book and page number or document number of the mortgage to which the assignment relates.

Further, Wilmington suggests the assignment's absence from Trystone's title report is "irrelevant" because Trystone and Alloway were charged with notice of the assignment, given that Wilmington's interest was recorded prior to the filing of Trystone's tax foreclosure action and the sheriff's sale to Alloway. Ultimately, Wilmington maintains its mortgage interests should be unaffected because it was not given notice of the sale or foreclosure.

Rule 4:65-2 governs notice of a public sale and requires "notice of the sale . . . be posted in the office of the sheriff of the county . . . where the property is located, and also, in the case of real property, on the premises to be sold . . . ." In addition, "at least [ten] days prior to the date set for sale, [the party obtaining the order or writ shall] serve a notice of sale by registered or certified mail, return receipt requested," on "every party who has appeared in the action[,]" the "owner of record[,]" and except in mortgage foreclosures, every other person with recorded ownership or lien interests. Ibid. A party objecting to a sheriff's sale must have a valid basis for the objection, such as

11

"fraud, accident, surprise, irregularity, or impropriety in the sheriff's sale." Brookshire Equities, LLC v. Montaquiza, 346 N.J. Super. 310, 317 (App. Div. 2002) (citing Orange Land Co. v. Bender, 96 N.J. Super. 158, 164 (App. Div. 1967)).

Under N.J.S.A. 46:26A-3(a):

> A document satisfies the prerequisites for recording . . . (6) if the document is an assignment, release or satisfaction of a mortgage or an agreement respecting a mortgage, it states the book and page number or the document identifying number of the mortgage to which it relates if the mortgage has been given such a number.

N.J.S.A. 46:25A-3, on which Wilmington relies, refers solely to the requirements for recording the mortgage assignment document itself, not the indexing cover sheet. Cover sheet requirements are governed by N.J.S.A. 46:26A-5, a law initially effective in 2012 and made mandatory in 2017. Specific regulations over cover sheet format, fields, and attributes are outlined in N.J.A.C. 15:3-9.13. These regulations allow each county recorder to adopt a cover sheet that complies with the regulations and meets the needs of its recordation procedures. N.J.A.C. 15:3-9.13(c)(2). Cover sheets are required by all county recording offices for submitted documents of all types, including deeds, mortgages, assignments, and liens. Proper cover sheets enable such documents to be indexed and located via computerized search.

The cover sheet to Wilmington's assignment contained the information as required by N.J.S.A. 46:26A-5(b)(1)-(3) and the corresponding regulations in N.J.A.C. 15:3-9.13(c)(1)(i)-(iii).  However, in failing to include the lot, block, street address, and name of the municipality, the cover sheet did not include additional data requested by the county clerk, thus impeding proper, complete title searches.  While the trial court considered the cover sheet deficiencies when assessing Wilmington's culpability, absent any intentional wrongful action or fraud, these deficiencies alone were not a valid reason to deny the motion to vacate the sale.

### B.

The ultimate question is therefore whether the trial judge abused his discretion in applying the doctrine of laches.  We conclude he did not.

Laches is an equitable doctrine operating as an affirmative defense and precluding relief when there is an "'unexplainable and inexcusable delay' in exercising a right." Fox v. Millman, 210 N.J. 401, 417 (2012) (quoting Cnty. of Morris v. Fauver, 153 N.J. 80, 105 (1998)).  Laches is "invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." Knorr v. Smeal, 178 N.J. 169, 180-81 (2003) (internal citations omitted).

Whether to apply laches "depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004) (quoting Garrett v. Gen. Motors Corp., 844 F.2d 559, 562 (8th Cir. 1988)). In deciding whether to apply laches, a court considers: 1) the length of the delay, 2) the reasons for the delay, and 3) how the circumstances of the parties have changed over the course of the delay. Knorr, 178 N.J. at 181. "The core equitable concern in applying laches is whether [an opposing] party has been [unfairly] harmed by the delay." Ibid. The period of laches should be computed by considering the earliest moment in time when the right to the relief being sought could have been asserted. Flammia v. Maller, 66 N.J. Super. 440, 453 (App. Div. 1961).

In considering the doctrine of laches in the context of a default judgment entered despite faulty service of process, we held that:

> Even substantial deviations from the prescribed procedures may be insufficient to require vacating a default judgment based upon flawed service if rights of an innocent third party have intervened. . . . "[E]ven owners who have been deprived of a property interest without notice can by their delay and the reasonable reliance of others lose the right to attack a judgment."
>
> [Sobel v Long Island Entm't Prods., Inc., 329 N.J. Super. 285, 293 (App. Div. 2000) (quoting Sonderman v. Remington Constr. Co., 127 N.J. 96, 106 (1992)).]

14

See also City of Newark v. Block 1852, 244 N.J. Super. 402, 407-08 (App. Div. 1990); Heinzer v. Summit Fed. Sav. & Loan Ass'n, 87 N.J. Super. 430, 439 (App. Div. 1965); Rogan Equities v. Santini, 289 N.J. Super. 95, 114-15 (App. Div. 1996); Woglemuth v. 560 Ocean Club, 302 N.J. Super. 306 (App. Div. 1997).

"[W]here a loss must be borne by one or two innocent persons, equity will impose the loss on that party whose acts first could have prevented the loss." Cambridge Acceptance Corp. v. Am. Nat'l Motor Inns, Inc., 96 N.J. Super. 183 (Ch. & Law Div. 1967), aff'd, 102 N.J. Super. 435 (App. Div. 1968). See also Hon. William A. Dreier et al., Guidebook to Chancery Practice in New Jersey, (Tenth Ed. 2018), Ch. I(A)(12). A court must consider "any prejudice that would accrue to the other party." In re Guardianship of J.N.H., 172 N.J. 440, 474 (2002).

Here, the trial court opined:

> [I]n the present case, the sheriff's sale took place on December 13, 2021. Wilmington learned of the sale approximately two months later on February 17, 2022. Wilmington immediately contacted [Trystone's] counsel to reach out to Alloway, but never engaged in any follow up communications nor attempted to reach Alloway themselves. Wilmington then waited approximately [four] months to intervene into the matter on June 10, 2022 . . . . In the meantime, . . . Alloway continued to expend money to make

improvements . . . . Wilmington had significant time to intervene in this matter and to assert their rights, but waited approximately [four] months to do so.

. . . .

Wilmington's delay to intervene and motion to vacate the sheriff's sale after receiving notice of the sale is inexcusable considering the reasons stated above.

Wilmington argues equity requires vacating the sheriff's sale to Alloway because it never received notice of the sale. It contends refusing to vacate the tax sale is unfair to it, "while any damage to Alloway upon vacating the sale could be addressed." Ultimately, Wilmington contends laches favors it and the trial court's decision is inequitable.

Rule 4:65-5 is the "Court Rule dealing with sheriff's sales and objections thereto . . . ." Brookshire Equities, 346 N.J. Super. at 315. The Rule expressly fixes a ten-day period for the submission of objections to a sheriff's sale. Hardyston Nat'l Bank of Hamburg v. Tartamella, 56 N.J. 508, 513 (1970). "A sheriff's sale is automatically confirmed after ten days without an objection being filed." Brookshire Equities, 346 N.J. Super. at 316.

While Wilmington could not have filed a motion within ten days of the sale given its claimed lack of notice, it fails to explain why they waited as long as it did to file its motion after learning of the sale. If ten days is the time limit

16

for objections in the ordinary course, Wilmington's significantly longer delay weighs strongly in Alloway's favor in the application of laches.

Our Supreme Court has identified circumstances that may warrant a delay in moving to vacate a sheriff's sale beyond the statutory ten-day limit. Scurry, 193 N.J. at 506. The Court in Scurry found the doctrine of laches could not bar a defendant homeowner from relief where the homeowner was not properly served with notice of a sheriff's sale, promptly acted upon learning of the sale, and then moved to vacate the sale four months later. Ibid. The doctrine of laches did not apply to protect the plaintiff lender's interests because:

> In the balance of equities that lies at the very foundation of the application of the doctrine of laches, the prejudice alleged by plaintiff simply does not match up to defendant having been dispossessed of her home and belongings without plaintiff's compliance with its procedural notice obligations. In these circumstances, where plaintiff cannot demonstrate compliance with the procedural requirements precedent to a valid mortgage foreclosure action, a conclusion to the contrary in respect of the applicability of the doctrine of laches lacks rationality, inexplicably departs from established policies, and rests, therefore, on an impermissible basis.
>
> [Id. at 505].

The court also noted, since the date when the foreclosed party lost access to the property "nothing has happened at or to the property . . . ." Ibid.

The trial court found <u>Scurry</u> distinguishable because Wilmington had significant time to intervene and instead waited four months during which Alloway incurred substantial sums to improve the property and pay its taxes. Although Wilmington frames the delay in intervening as a "slight delay," it is objectively unreasonable to find a seventy-five-day delay to be "slight." This is especially so given that Wilmington's recorded assignment indicates it paid Live Well $10.00 for the property.[5] Had Wilmington, within a reasonable time, sought to intervene in this matter and protect that substantial financial interest, the court could have exercised its discretion in vacating the tax sale to include Wilmington in the matter and put Alloway on notice before additional resources were put into the property's restoration.

The trial court's decision was not made without a rational explanation nor rests on an impermissible basis. Indeed, the trial judge reasonably exercised his discretion when considering the amount of time Wilmington allowed to pass before intervening and the considerable resources Alloway used to improve the

_____

[5] Although Wilmington's mortgage lien was $239,023.41, the price obtained at a sheriff's sale is presumed to be for the reasonably equivalent value of the property. <u>BFP v. Resol. Tr. Co.</u>, 511 U.S. 531, 537 (1994) (whether "reasonably equivalent value" equates to fair market value under 11 U.S.C. §548). Therefore, the value of this fire-damaged, abandoned structure was the $23,000 paid by Alloway at auction.

property during that time. Wilmington learned of the sale and Alloway's interest in February but did not promptly contact Alloway or otherwise place them on notice, and instead waited to move to intervene in May and to vacate the sale in June. The delay is objectively unreasonable under the facts. Wilmington sat on its rights and failed to intervene in a reasonable time, while Alloway invested time, money, and resources to rehabilitate the property.

The trial court properly applied the doctrine of laches and weighed the equities at stake when it concluded Wilmington lost its right to attack the foreclosure judgment. For these reasons, the trial court did not abuse its discretion, and equity does not warrant vacating the tax sale.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1287-22